IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT A. DOZIER, SR., | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-06-1591 |
| PERPETUAL, et al., | * | |
| Defendants | * | |
| | ****** | |

## MEMORANDUM OPINION

This is a civil rights case filed by Plaintiff, a state inmate, asserting a civil rights claim for deliberate indifference to a serious medical need. Paper No. 1. Counsel for Defendants has filed a dispositive motion. Paper No. 10. Plaintiff has filed a response.[1] Paper No. 14. No hearing is needed to resolve the question as to whether Plaintiff is entitled to relief. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' Motion to Dismiss and/or for Summary Judgment, construed as a summary judgment motion, shall be granted.

### 1. Background

Plaintiff states that on July 12, 2006, he was in the prison medical department due to heart problems. He asserts that Dr. Mulleta did not order the proper blood pressure medicine for him, "Nurse Perpetua"[2] did not give him any medical care, and P.A. Moss failed to order x-rays for

---

[1] Pending is plaintiff's Motion for Extension of Time to respond to the dispositive motion. Paper No. 13. The motion shall be granted. Plaintiff has also filed a Motion to Amend the Complaint. Paper No. 12. Plaintiff's Motion shall be denied. The Amended Complaint submitted by Plaintiff is unrelated to the allegations in the instant complaint which revolve around the denial of adequate medical care. In the amended complaint, Plaintiff seeks to add correctional employees who he alleges assaulted him on January 12 and 26, 2006 and on July 6, 2006. Plaintiff is of coarse free to file a new civil rights complaint.

[2] The correct spelling of defendant Perpetual's name is Perpetua Ogokeh. The Clerk shall be directed to amend the docket accordingly.

broken bones. He asks that Nurse Ogokeh be fired and he be awarded money damages from Correctional Medical Service, Dr. Mulleta and P.A. Moss. Paper No. 1.

The uncontroverted records before the Court demonstrate that Plaintiff was brought to the prison dispensary on January 12, 2006, complaining of chest pain and numbness in his hands. Perpetua Ogokeh, R.N. (Nurse Ogokeh) examined Plaintiff, who was using profanity and threatening to take medical staff to court. Nurse Ogokeh did not observe any signs or symptoms which indicated Plaintiff was suffering from cardiac problems. Nurse Ogokeh attempted to give Plaintiff Maalox and Tylenol for pain, but Plaintiff threw the medication on the floor. Correctional officers attempted to calm Plaintiff but he became extremely hostile and struck one of the correctional officers. Plaintiff was removed from the dispensary and escorted back to his cell. Paper No. 10, Ex. B, p. 1, 31.

On January 15, 2006, Plaintiff submitted a sick call slip. That slip, along with a second undated slip were received by the medical department on January 17, 2006. Plaintiff requested nitroglycerin and x-rays of his shoulder and head. *Id.*, p. 2-3. Plaintiff was evaluated by Nurse Ogokeh on January 17, 2006, complaints of chest pain. Plaintiff's vital signs were within normal limits and he was not in physical distress. Plaintiff was provided Tylenol and Maalox and advised to submit a sick call slip if his pain persisted. *Id.*, p. 4. On January 19, 2006, P.A. Moss prescribed nitroglycerin for Plaintiff. Plaintiff received the bottle of nitroglycerin on January 21, 2006. *Id.*, p. 32, 41.

Plaintiff next visited the dispensary on January 22, 2006, complaining that he had been hit after spitting at an officer. Plaintiff's right forehead was swollen and he had a small superficial cut on his right eyebrow that did not require stitches. Plaintiff's face was cleaned and ice was applied to the injured areas. *Id.*, p. 5.

Plaintiff was examined again on January 23, 2006, complaining about bruises on his face, back and knee. Plaintiff was examined by P.A. Moss who noted bruises around Plaintiff's right eye and bruises and tenderness over his lower left rib case. *Id.*, p. 6-7. Plaintiff was next examined on January 25, 2006. During this examination Nurse Ogokeh noted that Plaintiff had discoloration and bruises but his examination was otherwise normal. Plaintiff refused pain medication. *Id.*, p. 6.

Plaintiff submitted a sick call slip on January 30, 2006, complaining that he needed x-rays and pain medication. Plaintiff was examined by P.A. Moss who ordered x-rays of Plaintiff's left ribs. *Id.*, p. 7-8, 26. X-rays of Plaintiff's right shoulder were taken on February 3, 2006. X-ray, revealed no fracture or dislocation, *Id.*, p. 9.

Plaintiff submitted five sick call slips between February 7, 2006, and February 20, 2006. Plaintiff complained that his right shoulder was dislocated; that he needed to see an optometrist; that he had not received x-rays; and he was in unbearable pain. *Id.*, p. 10-14. X-rays of Plaintiff's chest and lower ribs were taken on February 20, 2006. *Id.*, p. 15.

Plaintiff was again examined by P.A. Moss on March 6, 2006. P.A. Moss advised Plaintiff that the x-ray of his ribs revealed minimally displaced fractures of the eighth and ninth ribs, but no lung collapse. Examination revealed minimal tenderness over Plaintiff's left rib and stability in his right shoulder. P.A. Moss prescribed Tylenol for discomfort and educated Plaintiff about his condition. *Id.*, p. 15, 16, 33. There is no treatment for rib fractures, other than pain control. *Id.*, Mulletta Affidavit.

Plaintiff sent a letter to Dr. Mulleta on February 24, 2006, and submitted sick call slips on February 25 and 28, 2006, complaining that he was not receiving medical care for his ribs and right shoulder, which he maintained was dislocated. *Id.*, Ex. B, p. 17-19.

3

Plaintiff was again examined by P.A. Moss on March 20, 2006. Plaintiff continued to complain of a dislocated shoulder, chest pain and back pain. P.A. Moss noted that the rib fractures were healing normally. Plaintiff's pain medication was renewed at the time, and again by Dr. Mulleta on March 28, 2006. *Id., pp. 20, 27,34-35.*

Plaintiff submitted a sick call slip dated March 4, 2006, complaining that he had not received his enteric-coated aspirin or cholesterol medication. CMS personnel did not receive the sick call slip until April 5, 2006. Plaintiff was examined by P.A. Moss on April 14, 2006. Moss indicated he would follow up on Plaintiff's medication. *Id.*, p. 21. On May 2, 2006, Dr. Muletta again renewed Plaintiff's medications. *Id.*, p. 28.

Plaintiff submitted a sick call slip on May 23, 2006, complaining of numbness and tingling of his right hand and right shoulder pain radiating to his palm. Examination by Dr. Muletta revealed Plaintiff had tenderness over the right deltoid muscle and pain with range of motion in the right shoulder. Plaintiff was diagnosed as suffering from shoulder strain with muscle spasm and neuropathic pain of the right median nerve; he was prescribed a muscle relaxant and Motrin for pain and was educated about his condition. *Id.*, p. 22, 29, 38-39.

On June 21, 2006, Plaintiff came to the dispensary complaining of chest pain and stating he was out of his nitroglycerin. An electrocardiogram was performed which was normal. Medical personnel noted that Plaintiff's color was good, his skin was warm and dry, and he had no complaints of nausea. He was given nitroglycerin and taken back to his cell. *Id.*, p. 24, 29, 40.

Plaintiff was examined the following day by P.A. Moss as a result of a sick call slip complaining of shoulder pain, chronic pain, and athlete's foot. Plaintiff's examination revealed no neurovascular deficits. Plaintiff's pain mediation and muscle relaxant were reordered and Plaintiff

was again educated about his condition. *Id.*, p. 23, 29.

Plaintiff's medication was renewed by Dr. Muletta on July 11, 2006, and blood work was ordered to be completed prior to his next clinic visit. *Id.*, p. 30. Plaintiff has received medication for hypertension since January, 2006. *Id.*, p. 31-34, 37-38, 40.

## 2. Standard of review

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*,128 F.3d 191, 196 (4th Cir. 1997) (citing *Anderson*, 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

## 3. Analysis

### A.     Respondeat Superior

Plaintiff's allegation against Correctional Medical Services, Inc. (CMS), the private prison health care provider, is based solely upon the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims, even where the defendant is a private corporation, rather than a municipality or other public agency. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md.,

October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Accordingly, Plaintiff's complaint against CMS. shall be dismissed.

**B.     Eighth Amendment**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part

of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Records before the Court demonstrate that Defendants have not acted with indifference to Plaintiff's medical needs. Rather, Plaintiff simply disagrees with the medical and professional judgment of his care providers. Such disagreements with a course of treatment do not provide the framework for a federal civil rights complaint but rather, at most, state a claim for negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).

Likewise, Plaintiff's disagreement with the length of time that lapsed before his ribs were x-rayed does not state a cognizable constitutional claim. *See Peterson v. Davis*, 551 F.Supp. 137, 146 (D.Md. 1982). The Court simply cannot find from the uncontroverted medical records before it that the medical care received by Plaintiff was so egregious as to constitute an Eighth Amendment violation.

### 4. Conclusion

For all the foregoing reasons, Defendants' motions for summary judgment shall be granted. A separate Order follows.

<u>April 30, 2007</u>                              <u>/s/                                             </u>
Date                                           RICHARD D. BENNETT
                                               UNITED STATES DISTRICT JUDGE